IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ALEXIS KOSTICK,

                     Plaintiff,                              OPINION AND ORDER

   v.

                                                       22-cv-191-wmc

MASONITE CORPORATION,
REMEDY INTELLIGENT STAFFING, LLC,
EMPLOYBRIDGE, LLC,
EMPLOYBRIDGE HOLDING COMPANY.

                     Defendants.

Among other things, plaintiff Alexis Kostick's complaint charges defendants Remedy Intelligent Staffing, LLC, and Masonite Corporation with violations of Title VII by terminating Remedy's placement of her in a general assembly job at Masonite soon after learning she was pregnant with monoamniotic twins. Following service of the complaint, Remedy filed a motion to stay and compel arbitration (dkt. #13) under a Mutual Agreement Regarding Arbitration and Class Claims (the "Agreement"), which requires all discrimination claims brought against it by employees be submitted to arbitration. Masonite filed a brief in support of Remedy's motion, asking on equitable grounds that the court also compel Kostick to arbitrate her nearly identical claims against it as well. For the reasons given below, the court will grant Remedy's motion and Masonite's request to benefit from the Agreement.

BACKGROUND

In December 2020, plaintiff Alexis Kostick applied for employment with Remedy. After communicating with Kostick, a Remedy representative sent her several documents to

review and sign as part of its hiring process. One of the documents that Remedy required Kostick to sign was a "Mutual Agreement Regarding Arbitration and Class Claims" (the "Agreement"), which contained mutual promises to arbitrate "any dispute between you and the Company relating to or arising out of the employment or termination of your employment." (Def.'s Br. (dkt. #14) Ex. A, at 1).

In early February 2021, Remedy placed Kostick in a temporary general assembly position at Masonite Corporation. Kostick was assigned the second shift, which required her to work from 3:25pm until 1:55am. About two months after beginning work, however, Kostick learned she was pregnant with monoamniotic twins, a condition that carries an increased risk of serious complications.[1] As a result, Kostick's doctors advised her to reduce the length of her work shifts to limit the time she spent standing late at night.

In late April 2021, Kostick presented a doctor's note to her Remedy supervisor and requested an accommodation to shorten her shift. The Remedy supervisor shared Kostick's request with Masonite, who offered Kostick an accommodation that would allow her to begin each shift two hours later. However, because her doctors advised her to end her shift two hours early to avoid working at night, Kostick told her Remedy and Masonite supervisors this accommodation was insufficient. The next day, Kostick received a call from her Remedy supervisor, who reported that Masonite could not accommodate her

---

[1] Monoamniotic twins "share the same amniotic sac within their mother's uterus." https://en.wikipedia.org/wiki/Monoamniotic_twins (last visited October 17, 2022). Although outcomes have improved dramatically "with aggressive fetal monitoring," possible complications include umbilical cord entanglement, cord compression and unequal nourishment. *Id*. As a result, regular ultrasounds and even "inpatient care with continuous monitoring" may be recommended. *Id*.

requested shift limitation and her placement at Masonite was terminated. Kostick then brought this suit against both Remedy and Masonite, claiming violations of Title VII as amended by the Pregnancy Discrimination Act.

OPINION

Enforcement of an arbitration clause is governed by the Federal Arbitration Act ("FAA") 9 U.S.C. § 1, *et seq.*, which states in relevant part that:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The United States Supreme Court subsequently repeatedly declared that the FAA evinces a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The Court has further held that the FAA "leaves no place for the exercise of discretion" and mandates that courts "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis original). As a result, any doubts as to whether the arbitration clause is susceptible to an interpretation that would cover the asserted dispute should be "resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Nevertheless," arbitration is contractual," *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017), and the party seeking to compel arbitration has the burden of showing that the parties are bound by an arbitration clause. *A.D. v. Credit One Bank,*

3

*N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018).  Thus, "[w]hether a binding arbitration agreement exists is determined under principles of state contract law." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, plaintiff Kostick does not challenge the validity of the Agreement, nor does she deny that the claims she is bringing against defendant Remedy fall under the scope of that Agreement.  (Pl.'s Opp'n (dkt. #20) 3-4.)  Instead, plaintiff argues that this court should not enforce the Agreement because it is unconscionable under Wisconsin contract law.  The court will first assess plaintiff's argument that enforcement of the Agreement requiring her to arbitrate her claims against Remedy is unconscionable, then address whether Masonite can also enforce an obligation to arbitrate under that Agreement.

I.  Unconscionability of Arbitration Agreement

An agreement is unconscionable in Wisconsin if there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 117 Wis. 2d 587, 601, 345 N.W.2d 417 (1984) (citation omitted).  In Wisconsin, the doctrine of unconscionability has been held to exist for the "prevention of oppression or unfair surprise," but not for the "disturbance of allocation of risks because of superior bargaining power." *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis.2d 514, 714 N.W.2d 155 (2006) (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:8, at 49-50 (4th ed. 1998)).  Moreover, as the party opposing enforcement of the arbitration

4

agreement, plaintiff Kostick bears the burden of establishing unconscionability. *Villalobos v. EZCorp, Inc.*, No. 12-cv-852-slc, 2013 WL 3732875, at *2 (W.D. Wis. July 15, 2013) (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000)). Before deciding whether a contract is unconscionable, a court must consider "a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis." *Jones*, 2006 WI 53, ¶ 33.

### A. Procedural Unconscionability

As for procedural unconscionability, the court must examine whether there was a "real and voluntary meeting of the minds" during the contract formation. *Jones*, 2006 WI 53, ¶ 34 (quoting *Disc. Fabric House*, 117 Wis. 2d at 602). Although no single factor is required to establish procedural unconscionability, *id.*, ¶ 58, relevant factors for this examination include "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract." *Id.*, ¶ 34. While plaintiff advances several arguments in favor of finding Arbitration Agreement procedurally unconscionable, none are persuasive, whether considered individually or taken together. First, plaintiff argues there was no "real and voluntary meeting of the minds" because she was twenty years old and had not attained a high school diploma. As a staffing agency, Remedy obviously benefitted from more business experience in drafting and greater bargaining power in offering a 20-year-old a standardized form contract on a take-it-or-leave-it basis. *Jones*, 2006 WI, ¶ 53. However,

5

"disparity in bargaining power alone is not necessarily sufficient to establish procedural unconscionability." *Id.* ¶ 49 n.42  To the extent that there was a business acumen or power imbalance, it was not much "more striking than that customary between potential" employers and employees. *Aul v. Golden Rule Ins. Co.*, 2007 WI App 165, ¶ 31, 304 Wis. 2d 227, 247, 737 N.W.2d 24, 33.  While this factor may somewhat support a finding of unconscionability, it is far from enough in isolation.

 Second, plaintiff claims Remedy did not provide any initial explanation of the terms of the arbitration Agreement (Pl.'s Opp'n (dkt. #20) 8), a fact that the Wisconsin Court of Appeals has found can weigh in favor of procedural unconscionability.  For example, a contract was found unconscionable when a bank solicited customers to open credit cards without reading, reviewing, or explaining the terms of the agreement to the plaintiffs, and only providing the written agreements after they had already signed up for a credit card. *Coady v. Cross Country Bank*, 2007 WI App 26, ¶ 32–34, 729 N.W.2d 732.  Defendant counters by pointing out that parties to a contract in Wisconsin have an obligation to read and review the terms before signing a contract. (Def.'s Reply Br. (dkt. # 26) 3–4.)  Indeed, "[f]ailure to read a contract, particularly in a commercial contract setting, is not an excuse that relieves a person from the obligations of the contract." *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 30, 657 N.W.2d 411, 423.  Thus, plaintiff's claim to have failed to read the Agreement (or at least not to have read it carefully), despite being asked to review and sign the Agreement as part of the process of being employed is also not a compelling reason to find that document unconscionable.

Third, plaintiff argues that because the Agreement was bundled among other documents and was hard to read and sign using her phone, its importance was obscured. (Pl.'s Opp'n (dkt. #20) 8.) Small print can support a determination of procedural unconscionability, *Coady*, 2007 WI App 26, ¶ 33, and the increasing practice of presenting an agreement for electronic signature without allowing time or opportunity to read it is suspect. As defendant points out, however, the size of the font was a result of plaintiff's decision to read the documents on a cell phone, and plaintiff does not represent that she had no other means to review the documents before signing them. (Def.'s Reply Br. (dkt. # 26) 5.) Additionally, the Agreement featured a large, bolded disclaimer at the top of the page -- "**The next document is the Mutual Agreement Regarding Arbitration and Class Claims. Signing this agreement is voluntary and not a condition of employment. Please review, choose accept or decline and sign and date as indicated.**" -- which undermines plaintiff's argument that defendant's style of presentation disguised or discounted the document's importance. Finally, the Arbitration Agreement was just two pages long and written in relatively clear, understandable language. Indeed, in *Deminsky*, the Wisconsin Supreme Court found similar elements to be insufficient to find a contract unconscionable, emphasizing "the form was one page, front and back . . . [and d]irectly above the space where [plaintiff] signed his name was a one-paragraph warning that there were terms and conditions on the back to which the signer would be held." 2003 WI 15, ¶ 29. Given that

Kostick chose to read the Agreement on a small phone screen and the relative simplicity of its language, these factors further weigh against a finding of unconscionability.

Fourth, and finally, plaintiff points out that Remedy drafted and presented the standardized contract with no opportunity for plaintiff to negotiate or alter the terms of the Agreement. While standardized contracts are common, they are suspect when they are offered on a take-it-or-leave-it basis with no opportunity to negotiate or modify the pre-printed form. *Jones*, 2006 WI 53, ¶ 53. Here, too, plaintiff does not claim to have had no meaningful choice but to accept the Agreement due to a lack of alternative employment opportunities or other coercion. In fact, on this record, plaintiff had a meaningful choice because she could have rejected the agreement and still obtained employment with Remedy. *See Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1174 (E.D. Wis. 2017) (finding no procedural unconscionability because plaintiff "had the opportunity to opt out of arbitration altogether, unilaterally, and without consequence," and this opportunity was "called out in bolded capital letters within the first few paragraphs of the agreement").

Here, as already noted, the plain terms of the contract, printed in large, bolded font at the top of the Arbitration Agreement, state that signing "**is voluntary and not a condition of employment**." (Def.'s Br. (dkt. #14) Ex. A, at 1). Additionally, while plaintiff suggests she encountered technical issues that would not have allowed her to decline voluntary elections related to healthcare and paycheck matters, she conspicuously fails to assert that she even *attempted* to do so, much less declined to sign the Arbitration

8

Agreement.[2] Thus, unlike *Coady* and *Jones*, Kostick can neither argue that she was pushed into an adhesion contract, nor dispute the voluntary nature of her acceptance of it.

Ultimately, "[t]he unconscionability question requires a balancing approach." *Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶ 12, 685 N.W.2d 884, 889. While Kostick was young, minimally educated and presented with what was a take it or leave it obligation to arbitrate her disputes with Remedy under the Agreement, the fact that it was relatively simple, included plain warnings, and most importantly, was entirely optional, all weigh against a finding that the Agreement was procedurally unconscionable.

B. **Substantive Unconscionability**

Because plaintiff has failed to advance sufficient facts to support a finding of procedural unconscionability, it is unnecessary for the court to reach the question of the Agreement's substantive unconscionability. *Jones*, 2006 WI 53, ¶ 33 ("A determination of unconscionability requires a mixture of *both* procedural and substantive unconscionability . . . .") (emphasis added). However, even if the Agreement was procedurally unconscionable, plaintiff has not presented enough evidence to find the Agreement was also substantively unconscionable.

---

[2] As defendant Remedy points out, the evidence is to the contrary: in order to complete her application, Kostick had to both accept the terms of employment and authorize an electronic signature on the Arbitration Agreement itself. *See* 15 U.S.C. § 7001(a)(1) ("a signature . . . may not be denied legal effect, validity, or enforceability solely because . . . electronic . . . in its formation"). And when notified by Remedy of the need to complete "a few Docusign's" as a "final step" in the employment process, the only ones Kostick complained about having to sign related to health insurance and pay card provisions. (Dkt. #21-1.)

9

Substantive unconsciounability examines the "one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue." *Id.* at ¶ 59. A court analyzing substantive unconscionability must determine whether the terms are "commercially reasonable" under the circumstances, determined "in light of the general commercial background and the commercial needs." *Id.* at ¶ 36 (quoting 8 Richard A. Lord, *Williston on Contracts* § 18:8, at 22-28 (4th ed. 1998)).

Plaintiff argues the Agreement is substantively unconscionable because the scope of the agreement to arbitrate is too broad to be commercially reasonable. Plaintiff reads the Agreement's application to "the Company" (defined as Remedy, fourteen named entities, and "all related entities") and "the Company's clients where employees may be sent to work" expansively. (Def.'s Br. (dkt. #14) Ex. A, at 1). Arguably, that definition insulates an unreasonable number of potential parties from litigation and impractically broadens the scope of claims subject to mandatory arbitration. Plaintiff further argues that the substantively unconscionable portions of the agreement cannot be severed while giving effect to the remaining provisions.

If the court were to accept plaintiff's reading, the Agreement could apply to any number of unlikely and unintended situations, including those where a worker is injured by some random, third party, then be forced into arbitration because that third party was once a client of Remedy. However, the court is unconvinced such an expansive interpretation is necessary. Plaintiff also has not explained why her interpretation of the provision results in substantive unfairness *in her situation* given that the dispute at issue involves the client-employer with whom plaintiff was placed to work. Thus, even if the

10

scope of the waiver were unconscionably broad, insofar as it applies to every conceivable client-employer, the court could still neatly sever this phrase and enforce the agreement between plaintiff and defendant Remedy. *In re F.T.R.*, 2013 WI 66, ¶ 66, 833 N.W.2d 634 ("Though a severability clause itself is not controlling, it is entitled to great weight in determining whether the remainder of a contract is enforceable.") (citing *Town of Clearfield*, 150 Wis. 2d 10, 24, 440 N.W.2d 777 (1989)). Given the express severability of the disputed clause and the fact that it would not lead to an absurd result in the case at hand, there would still be no substantive unconscionability in the Agreement's enforceability between plaintiff and Remedy. Accordingly, because plaintiff has not presented persuasive evidence of substantive unfairness and has only demonstrated slight, if any, procedural unfairness, the scales do not tip in favor of unconscionability.

## II.  Enforcement of the Agreement by a Non-Signatory

Having found the arbitration agreement is enforceable as to claims against Remedy, the question remains as to whether Kostick may also be compelled to arbitrate her claims against defendant Masonite, a non-signatory to the Agreement. Masonite argues Kostick should be equitably estopped from refusing to arbitrate her claims against it because: (1) she characterized Remedy and Masonite as joint employers; and (2) her claims against each are factually intertwined. (Def. Masonite's Br. (dkt. #19) 5.)

A court cannot compel a party "to submit to arbitration any dispute which he has not agreed so to submit." *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960)); *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)).

11

However, "a litigant who was not a party to the relevant arbitration agreement may invoke [arbitration] if the relevant state contract law allows him to enforce the agreement." *Scheurer*, 863 F3d at 752 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). In *Arthur Andersen*, the United States Supreme Court identified "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel" among the "traditional principles of state law" that could govern who may enforce an agreement. 556 U.S. at 631.

Under Wisconsin law, equitable estoppel requires proof of four elements: "(1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment." *Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 934 (E.D. Wis. 2014) (citing *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶ 33, 715 N.W.2d 620.) Here, Masonite does not address the element of reasonable reliance required by Wisconsin law. Instead, Masonite relies on a Second Circuit decision that applied the equitable estoppel doctrine developed under federal common law, which does not require that element. *See Ragone v. Atl. Video Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010). However, the Seventh Circuit has expressly declined to apply federal equitable estoppel law in enforcing an arbitration agreement because the Supreme Court has held that applicable state law governs. *See Scheurer*, 863 F.3d at 752 ("the Supreme Court directly addressed which law governs who may enforce an arbitration agreement . . . explain[ing] that 'traditional principles of state law' govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party") (quoting *Arthur*

12

*Andersen*, 556 U.S. at 631).  Indeed, in the face of controlling, contrary Seventh Circuit and Supreme Court case law, Masonite does not explain why this court should not apply Wisconsin's equitable estoppel doctrine.  Accordingly, the court will follow binding precedent and turn to Wisconsin's common law for guidance.

Here, having offered no evidence that it reasonably relied on the arbitration agreement between plaintiff and Remedy at any point before this dispute arose, Masonite's equitable estoppel claim fails under Wisconsin law.  *See Scheurer*, 863 F.3d at 754 (affirming the district court's finding that the non-signatory employer failed to set forth any evidence that it reasonably relied on, or even knew about, the arbitration agreement as required by Wisconsin contract law).  Despite having the burden of proof, Masonite has not even *claimed* reliance on the Agreement, much less provided evidence to prove its reliance was reasonable.  Accordingly, Kostick is not equitably estopped from refusing to arbitrate her claims against Masonite.

Nevertheless, the court finds sufficient evidence that Masonite *is* a third-party beneficiary of the Agreement.  Even as a non-signatory, federal policy favoring arbitration, risks of inconsistent verdicts if the nearly identical claims against defendants were to proceed in different forums, judicial economy, and most importantly, the plain language of the Agreement itself provide a compelling basis to hold that Masonite is a beneficiary of the Arbitration Agreement, even if it did not specifically argue for enforcement of the Agreement as a third-party beneficiary. (Def. Masonite Answer (dkt. #12); Def Masonite's Br. (dkt. #19).  Specifically, the language in the Arbitration Agreement unambiguously

13

states that it "is intended to also apply to" Remedy's "clients where employees may be sent to work as explicit third-party beneficiaries." (Def.'s Br. (dkt. #14) Ex. A, at 1).

Non-signatories may enforce an arbitration agreement if they qualify as third-party beneficiaries under the relevant state law. *Arthur Andersen*, 556 U.S. at 631. Under Wisconsin law, a third-party beneficiary may enforce a contract "if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit." *Milwaukee Area Tech. Coll. V. Frontier Adjusters of Milwaukee*, 2008 WI App 76, ¶ 20, 312 Wis. 2d 360, 752 N.W.2d 396 (citing *Pappas v. Jack O.A. Nelson Agency, Inc.*, 81 Wis. 2d 363, 371-72, 260 N.W.2d 721 (1978)). Intent can be established by specific language in the agreement or by the totality of the circumstances. *See Becker v. Crispell–Snyder, Inc.*, 2009 WI App 24, ¶¶ 11, 14, 316 Wis.2d 359, 763 N.W.2d 192 (2009) (citations omitted). A party may state a claim based on third-party beneficiary status by either affirmatively raising the argument or by "attach[ing] a copy of the agreement that demonstrates that purpose." *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 19, 291 Wis. 2d 283, 717 N.W.2d 17.

As just quoted, the Agreement here expressly states it "is intended to also apply" explicitly to a broader class of "third-party beneficiaries" consisting of Remedy's clients where an employee "may be sent to work." (Def.'s Br. (dkt. #14) Ex. A, at 1). Thus, Kostick was (or should have been) on express notice at the time she entered into the Arbitration Agreement that it intended to benefit both Remedy and its clients (like Masonite) by consolidating in one arbitral forum any claims against them falling within the scope of the agreement. This is not merely an incidental benefit when the parties to

the agreement expressed their intent to confer a benefit to Remedy's clients in writing. *See Pappas*, 81 Wis. 2d at 372-73 (finding a company with an interest in restaurant equipment was a third-party beneficiary under an oral contract to procure insurance because the person procuring insurance and the insurer discussed and intended to purchase insurance for parties who had an interest in the equipment).

Defendant Masonite certainly belongs to this class of Remedy's clients as an employer accepting Remedy's candidates for job placements. In fact, plaintiff herself identifies Masonite as "one of [Remedy's] employer clients" for whom she went to work. (Pl.'s Compl. 2). Because Masonite may enforce the Agreement as a third-party beneficiary, and because resolution of Kostick's claims against both parties in arbitration would serve the interests of judicial efficiency and fairness by consolidating resolution the parties' dispute in one forum and reducing the risk of inconsistent results, this court will grant Masonite's request to compel Kostick to arbitrate her claims against it as well.

## ORDER

IT IS ORDERED that defendants Remedy and Masonite's motion to compel arbitration (dkt. #13) is GRANTED and that this dispute be consolidated for resolution in one arbitral proceeding under the Arbitration Agreement.

Entered this 24th day of October, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge